IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MONTE CHARLES, individually and on
behalf of all others similarly situated,

                Plaintiff,                OPINION and ORDER

  v.

                                  24-cv-255-jdp

AMERICAN PHOENIX, INC.,

                Defendant.

---

      Plaintiff Monte Charles was a "production employee" for defendant American Phoenix, Inc., which performs industrial rubber mixing and pre-weigh chemical packaging. American Phoenix is headquartered in Eau Claire, Wisconsin, but Charles worked in American Phoenix's Topeka, Kansas production facility. Charles sued American Phoenix under the Fair Labor Standards Act (FLSA) and the Kansas Wage Payment Act (KWPA) for failing to pay him overtime for the time he spent removing dirty clothes and cleaning off chemicals at the end of a shift.

      The court previously authorized Charles to send notice to an FLSA collective consisting of hourly employees who performed 10 different jobs that "were involved in the production process and/or may otherwise encounter unbagged product." Dkt. 21, at 2. Now the parties move to certify a class of employees who worked at the Kansas facility and to preliminarily approve a proposed settlement for both the class and the collective. The court will deny the motions without prejudice but allow the parties to file a renewed motion that addresses the concerns raised in this order.

ANALYSIS

The settlement defines the proposed class as follows:

> The 249 current and former hourly paid, non-exempt production employees of Defendant who (i) worked at Defendant's facility in Topeka, Kansas, (ii) for at least one workweek between April 17, 2021, and May 27, 2025, and (iii) do not timely exclude themselves from this action ("Class Members"). A list of putative Rule 23 Class members is attached as Exhibit 2.

Dkt. 40-2, at 4.

The settlement defines the collective as follows:

> The 212 current and former hourly-paid, non- exempt employees of Defendant, including Class Representative, who timely opted-in to this Lawsuit by filing a Consent form with the Court on or before the forty-fifth (45th) day after mailing of the Notice authorized by the Court in Dkt. 21 (see Dkt. 1, 2, 4-5, 8, 22-23, 25-33).
>
> The group shall be referred to as the "Collective Members." A list of putative Collective Members is attached as Exhibit 1.

Dkt. 40-2, at 4. A different portion of the settlement clarifies that the collective period goes from October 1, 2021, to November 12, 2024. *Id.* at 7. The settlement does not explain how the collective members were chosen, but the notice previously approved by the court stated that the collective included production employees at American Phoenix's facilities in Topeka, Kansas; Danville, Virginia; Fayetteville, North Carolina; Lawton, Oklahoma; and Anniston, Alabama. Dkt. 21, at 3.

The basic terms of the settlement are as follows:

- American Phoenix will pay out $100,000. *Id.* at 5.

- Class counsel will receive one-third of the total, or $33,333.33. *Id.* at 7.

- The settlement administrator will be paid $12,634. *Id.* at 13.

- The class representative will receive a $2,500 incentive payment. *Id.* at 8.

2

- The class will receive "approximately" $23,686.68. *Id.* at 6.

- The collective will receive "approximately" $19,808.77. *Id.* at 7.

- Each collective or class member will receive a pro-rata share based on the number of weeks that employee worked during the relevant period. *Id.* at 6–7. The average payout for an employee will be about $94, which, according to the parties' estimates, represents between four and five minutes a day during the relevant period. *See* Dkt. 41, at 9.

- Class members will release "all wage and hour . . . claims" under state law against American Phoenix and collective members will release "all wage and hour . . . claims" under federal law. Dkt. 40-2, at 20–21.

- Notice will be sent to each class member by mail, email, and text message. *Id.* at 15. The parties do not propose sending notice to the collective.

The court has several concerns about both the scope of the class and collective and the proposed settlement.

First, the parties do not explain why the class and collective have a different temporal scope. The class covers April 2021 to May 2025; the collective covers October 2021 to November 2024. The different starting periods could be explained by the different tolling rules for Rule 23 and the FLSA. Rule 23 tolls the limitations period once the lawsuit is filed, *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974); the FLSA limitations period is not tolled until a collective member opts in, *see Richards v. Eli Lilly & Co.*, 149 F.4th 901, 907 (7th Cir. 2025). This lawsuit was filed in April 2024, and the parties sought conditional certification in October 2024. But that would not explain why the class and collective periods have different *end* dates. The parties must explain this.

Second, it is not clear why the class and collective appear to be mutually exclusive. The parties sent FLSA notice to employees at several facilities across the country, including the facility in Topeka, Kansas. This suggests that some members of the Kansas class, including

named plaintiff Monte Charles, should also be members of the FLSA collective. But the lists the parties submitted of the class and collective members do not appear to overlap. *Compare* Dkt. 40-2, at 26–28 with Dkt. 40-2, at 29–31. Did the parties exclude employees at the Kansas facility from the FLSA collective, and, if so, why?

Third, the amounts the parties provide do not add up to $100,000. Rather, the sum of the requested attorney fees and costs ($33,333.33), administrative costs ($12,634), incentive payment ($2,500), relief to the class ($23,686.68), and relief to the collective ($19,808.77) is $91,962.98. The parties must explain the discrepancy.

Fourth, the parties do not explain why an employee's share is determined solely from the number of weeks worked during the relevant period. This would be reasonable if all class and collective members worked about the same amount of overtime (and at the same rate) and performed jobs that required about the same amount of cleaning at the end of the shift. But the parties provide no foundation for finding that the employees are similarly situated in these ways.

Fifth, class counsel's fee request is based on the assumption that the court evaluates the reasonableness of fees based on the total amount the defendant may pay. That is incorrect. "The ratio that is relevant to assessing the reasonableness of the attorney's fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014). This means that: (1) costs and expenses are not included in the denominator when assessing the reasonableness of attorney fees; and (2) the percentage is based on what the class members actually receive, not on what they could receive. *See Camp Drug Store, Incorporated v. Cochran Wholesale Pharmaceutical, Inc.*, 897 F.3d 825, 833 (7th Cir. 2018) (affirming the district court's decision to limit class counsel's attorney fees

4

to "one-third of what the members of the plaintiff class actually recovered"). A reasonable rate is usually no more than about one-third of settlement after costs and expenses are subtracted. *See Pearson v. NBTY, Inc.,* 772 F.3d 778, 782–83 (7th Cir. 2014).

In this case, class counsel says that the parties will be receiving approximately $43,500, which means that the fee request represents well over 40 percent of the total under the *Redman* formula. The court would be unlikely to approve such a high percentage in the absence of special justification.

Regardless of whether a fee request is justified under the percentage-of-recovery method, this court requires a lodestar cross check. S*ee Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014) (holding that courts have discretion to apply either percentage-of-recovery method or lodestar method). This cross check means that counsel's motion for attorney fees must comply with the court's procedures for fee petitions. Those procedures may be found on page 39 of the court's standard attachments, which were provided with the preliminary pretrial conference order, Dkt. 16. Among other things, the procedures require counsel to include billing records showing that their fees are reasonable. Class counsel should comply with these procedures in their renewed motion, and they may not seek credit for time spent on their unsuccessful motion for preliminary approval and certification.

Sixth, the parties' motion for preliminary approval did not directly address any of the factors for approval listed in Rule 23(e)(2). Instead, the parties relied solely on the common–law standard. There is overlap among the two standards, but the parties' renewed motion should address each of the factors identified in Rule 23(e)(2).

Seventh, the parties do not explain why members of the collective are not receiving notice. It is true that members of the collective already have notice of the case because they opted in. But the collective still needs notice of the settlement, so that they have an opportunity to either object or withdraw their consent to participate. Class counsel cite numerous boiler-plate declarations from some of the collective members, stating that they are "happy that this is matter is resolved," and they "urge the Court to approve the settlement." Dkt. 43. But none of those declarations state that the collective members actually received notice of the terms in the settlement. The parties must either send notice to the collective and give them an opportunity to object or provide signed declarations from each member stating that they have reviewed the terms of the settlement, and they do not object.

Eighth, a related problem is that there is no provision in the settlement explaining what happens to the share of a collective member who chooses to withdraw before the settlement is approved. There is a provision for *class* members who opt out (their shares get redistributed among the class, Dkt. 40-2, at 6), but the parties seem to assume that no collective member will object to the settlement (which is likely based on their assumption that collective members are not entitled to notice). The parties should modify the agreement or explain why no modification is needed.

Ninth, the parties have not explained the scope of the proposed releases. The settlement agreement releases "all wage and hour" claims that arose during the class or collective period. Dkt. 40-2, at 20–21. But this case is not about "all wage and hour" claims; it raises a narrow question about overtime compensation for doffing and cleaning at the end of a shift. *See Williams v. Gen. Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 273–74 (7th Cir.1998) (releases in class actions should be limited to claims "based on the identical factual predicate as that

6

underlying the claims in the settled class action"). The parties have not attempted to assess the value of the other released claims or otherwise explain why it is fair and reasonable to impose such a broad release. *See Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 286–87 (7th Cir. 2017) ("[I]t is necessary for a court to scrutinize what claims the class is giving up and what the class is receiving in exchange.").

Tenth, the parties state that they intend to retain a settlement administrator, but they neither identify who the administrator is nor describe the administrator's qualifications. The renewed motion for preliminary approval should include that information.

Eleventh, the settlement contemplates that the court will dismiss the case with prejudice *and* retain jurisdiction over the settlement. *See* Dkt. 40-2, at 13, 23. Generally, the court cannot do both of those things. *Blue Cross & Blue Shield Ass'n v. Am. Express Co.*, 467 F.3d 634, 636–37 (7th Cir. 2006); *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489–90 (7th Cir. 2002). The parties should clarify in their renewed motion what they want the court to do.

Twelfth, and last, the parties say nothing in their motion or their settlement about their responsibilities under 28 U.S.C. § 1715 to notify the appropriate officials of their settlement. The task is often carried out by the settlement administrator, but the settlement agreement does not include the task in the list of responsibilities it assigns to the administrator. *See* Dkt. 40-2, at 14–15. The parties should clarify in their renewed motion how and when they will comply with their obligations under § 1715.

ORDER

IT IS ORDERED that the parties' motion for class certification and preliminary approval of their settlement agreement, Dkt. 40, is DENIED without prejudice. The parties may have until December 4, 2025, to submit a renewed motion.

Entered October 30, 2025.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge